## SETH GINSBERG

### ATTORNEY AT LAW

January 28, 2012

Honorable Eric N. Vitaliano
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re:**    ___United States v. Joseph Cutaia__, **10-cr-10 (S-6) (ENV)**

Dear Judge Vitaliano:

### INTRODUCTION

On February 3, 2012, Joseph Cutaia will appear before your Honor to be sentenced for his conviction upon his plea of guilty to two counts of violating 18 U.S.C. § 1951(a) and one count of violating 18 U.S.C. § 924(c).

Cutaia pled guilty pursuant to a plea agreement, dated April 1, 2011, (the "Plea Agreement"), in which the parties agreed that the offense level for the § 1951 violations is 23, which, in Criminal History Category VI, has a corresponding sentencing range of 92 to 115 months imprisonment.  Exhibit A, Plea Agreement at 5.  In addition, the parties agree that the § 924(c) violation carries a mandatory 120-month term of imprisonment, which must run consecutively to the sentence imposed on the other counts.  Exhibit A, Plea Agreement at 5. Accordingly, the effective Guidelines range is 212 to 235 months imprisonment—or, roughly 17 ½ to 19 ½ years.  Exhibit A, Plea Agreement at 5.

Beyond the stipulated Guidelines offense level, the Plea Agreement also specifies that the Court is required to consider the statutory factors set forth in 18 U.S.C. § 3553(a).  Exhibit A, Plea Agreement at 3.  Moreover, in acknowledgement of the fact that the Court could reasonably conclude that a non-Guidelines sentence is sufficient to satisfy the mandates of 18 U.S.C. § 3553(a), the terms of the Plea Agreement permit Cutaia to advocate for a sentence below the stipulated Guidelines range—and, as discussed below, it is our request that the Court sentence Cutaia to a term of 15-years imprisonment.

Despite lengthy and detailed negotiations between the government and Cutaia to arrive at an appropriate Guidelines calculation, the Department of Probation's ("Probation") calculations differ substantially from those of the parties.  Presentence Investigation Report, dated September 9, 2011 ("PSR").  Rather than an offense level of 23 for the robberies as agreed upon by the parties, Probation instead claims that the offense level is 34, which carries a range of imprisonment of 262 to 327 months, plus 120 months for the firearms conviction, for a combined range of 382 to 447 months imprisonment—or, approximately, 32 to 37 years.  PSR at 53.

5 HANOVER SQUARE, NEW YORK, NEW YORK  10004    TELEPHONE  212-537-9202    FAX 646.607.8597    SRGINSBERG@MAC.COM

Honorable Eric N. Vitaliano
January 28, 2012
Page 2 of 14

In sum, then, Probation recommends a sentence double the length of the one upon which the parties agreed. Probation's calculations—with which we disagree—are based upon (a) its inclusion of two offense level increases that the parties determined are inapplicable; (b) its rejection of the two-point offense level decrease for the global disposition of this matter that the parties agreed upon; and (c) its conclusion that Cutaia is a Career Offender. For the reasons discussed below, we respectfully submit that the Court should adopt the Guidelines calculation agreed upon the parties because it represents a fair and just sentence that is reasonable under the totality of the circumstances.

In the sections that follow, we provide the Court with **(1)** the Guidelines calculations in the Plea Agreement; **(2)** a discussion of our major objections to the PSR; **(3)** an analysis of the relevant legal authority; **(4)** a discussion of the facts that demonstrate that a sentence in keeping with the Plea Agreement satisfies the requirements of 18 U.S.C. § 3553(a); and, finally, **(5)** our request for a sentence of 15 years imprisonment as just and reasonable in light of the totality of the circumstances.

**THE GUIDELINES CALCULATIONS**

As noted above, Joseph Cutaia stands convicted of participating in two Hobbs Act robberies and one firearms offense. The parties agree that the applicable Guidelines offense level for the Hobbs Act offenses is 23, calculated as follows:

**Count 23 (Robbery – Jane Doe)**

| | |
|---|---|
| Base Offense Level (§ 2B3.1(a)): | 20 |
| Firearm Brandished (§ 2B3.1(b)(2)(c)) | 5 |
| Physical Restraint (§ 2B3.1(b)(4)(B)) | 2 |
| **Adjusted Offense Level:** | **27** |

**Count 24 (Robbery – John Doe #5)**

| | |
|---|---|
| Base Offense Level (§ 2B3.1(a)): | 20 |
| Carjacking (§ 2B3.1(b)(5)) | 2 |
| **Adjusted Offense Level:** | **22** |

**Multiple-Count Adjustment**

| | |
|---|---|
| Offense Level of Highest Group (§ 3D1.4) | 27 |
| Units:  Count 23 (§ 3D1.4(a)): 1.0 | |
| Count 24 (§ 3D1.4(b)):  .5 | |
| Total Units:             1.5 | |
| Levels Added (§ 3D1.4): | 1 |

| | |
|---|---|
| **Combined Adjusted Offense Level:** | **28** |
| Less Acceptance of Responsibility: | 3 |
| Less Global Disposition (§ 5K2.0): | 2 |

| | |
|---|---|
| **Total Offense Level:** | **23** |

Honorable Eric N. Vitaliano
January 28, 2012
Page 3 of 14

Thus, as previously mentioned, in Criminal History Category VI, offense level 23 has a corresponding range of imprisonment of 92 to 115 months. In addition, the parties agree that the firearms offense charged in Count 26 carries a mandatory term of 120 months imprisonment. Consequently, the effective Guidelines range of imprisonment is 212 to 235 months.

## OBJECTIONS TO THE PRESENTENCE REPORT

As detailed in our letter to Probation, we have a number of objections to the PSR. Exhibit B, Letter from Seth Ginsberg to U.S. Probation Officer Angelica Deniz, dated October 7, 2011, ("PSR Objection Letter") at 3. Below, we address only the three most salient of those objections.

**First**, Probation includes two increases in the Guidelines not contained in the Plea Agreement. PSR at 37. With respect to Count 23, Probation adds a one-level increase based upon the unsubstantiated claim that the offense involved a loss in excess of Ten Thousand Dollars ($10,000). PSR at 37. In addition, with respect to Count 24, Probation adds three levels based upon the erroneous claim that Cutaia was a manager or supervisor of the other participants involved in the offense. PSR at 37.

We registered with Probation our objections to each of these offense level increases on the ground that they are not supported by the evidence, and, pursuant to the Plea Agreement, at sentencing the government will not seek to prove either increase by a preponderance of the evidence. Exhibit B, PSR Objection Letter at 3.

In an addendum to the PSR, dated November 15, 2011 ("PSR Addendum"), Probation states—without any supporting evidence—that the information contained in the PSR "was provided by the Government, which stated that it can prove the conduct by a preponderance of the evidence." PSR Addendum at 2. Yet, on April 1, 2011, when the government drafted the Plea Agreement—with full knowledge of the relevant facts—the government concluded that the now-disputed offense level increases were unwarranted. Plea Agreement at 3-4. Thus, unless the government claims that it received information subsequent to the date of the Plea Agreement that caused it to change its calculations—and it is our understanding that such is not the case—it would be patently unfair to increase Cutaia's offense level on these grounds.

Indeed, the offense level increases at issue were the subject of negotiation and the government concluded that they were not warranted and chose to exclude them in order to secure Cutaia's plea. Had the government learned new information subsequent to Cutaia's plea, it would be a different matter. As it stands, however, it would be unjust to sentence Cutaia based upon information that the government knowingly excluded from the Plea Agreement. To do otherwise would suggest that plea agreements are meaningless because the government is free to entice a defendant to plead guilty based upon Guidelines calculations provided in a plea agreement and thereafter advocate by proxy through Probation to deprive the defendant of the benefit of the bargain. We do not believe that this outcome is what the government intends, and we respectfully request that the Court reject Probation's analysis.

Honorable Eric N. Vitaliano
January 28, 2012
Page 4 of 14

     **Second**, in addition to the determination that Cutaia is a Career Offender, the PSR also varies from the Plea Agreement in that it fails to include the two-level decrease agreed upon by the parties because of the global disposition of the matter. Plea Agreement at 4. As the Court is aware, this case involves numerous defendants who have all pled guilty, which saved the government substantial resources. Moreover, Cutaia was the first defendant charged in this case (more than two years ago), yet despite the fact that he readily informed the government of his desire to resolve the matter, he was delayed in doing so because his plea was contingent upon the pleas of his numerous co-defendants who were added in successive superseding indictments. Consequently, the government included a two-level reduction in recognition of his unique position in the case. Accordingly, we respectfully request that the Court validate this aspect of the agreement of the parties.

     **Third**, and most significantly, Probation labels Cutaia a Career Offender under the Guidelines. PSR at 38. This issue is monumental and is alone responsible for increasing the offense level to 34 (base offense level of 37, less three for acceptance of responsibility, and no consideration for the global disposition). The applicability of the Career Offender Guidelines in this case is something that government and defense counsel considered but determined was unwarranted. Subsequent research has, however, disclosed that there is some validity to Probation's determination. Nonetheless, for the reasons discussed below, we do not believe that the Court should sentence Cutaia as a Career Offender, and it is our understanding that the government does not oppose our position.

     Probation's determination that Cutaia is a Career Offender is based upon two prior convictions, only one of which—a conviction for attempted burglary in the third degree, which occurred on October 18, 2005—is at issue here. PSR Addendum at 3.

     Under the relevant provisions of § 4B1.1 of the Guidelines, a person is a Career Offender if the instant offense is a crime of violence, and the person had at least two prior felony convictions for crimes of violence. U.S.S.G. § 4B1.1(a). In addition to a variety of other offenses, § 4B1.2(a)(2) specifies that burglary of a *dwelling* constitutes a crime of violence under the Career Offender provisions of the Guidelines. U.S.S.G. § 4B1.2(a)(2).

     In New York State, burglary in the third degree occurs when a person "knowingly enters . . . unlawfully in a *building* . . . ." N.Y. Penal Law § 140.20 (emphasis supplied). By contrast, if the "building" in question is a dwelling, New York elevates the crime from third-degree to second-degree burglary. N.Y. Penal Law § 140.25. Accordingly, because Cutaia was convicted of third-degree and not second-degree burglary—that is, because he was not convicted of burglarizing a dwelling as required by § 4B1.2(a)(2)—both government and defense counsel determined that this conviction did not render Cutaia a Career Offender under the Guidelines.

     Subsequent research, however, has revealed that, in 2008, the Second Circuit determined that a violation of New York Penal Law § 140.20 qualifies as a crime of violence under §

Honorable Eric N. Vitaliano
January 28, 2012
Page 5 of 14

4B1.2(a)(2)'s residual clause. *United States v. Brown*, 514 F.3d 256, 268-69 (2d Cir. 2008).[1]
Nevertheless, because the Plea Agreement is predicated upon the determination that Cutaia is not
a Career Offender, and because the parties expended considerable effort to reach this agreement,
which we believe represents a reasonable sentence under the circumstances, we request that the
Court sentence Cutaia in accordance with the agreement of the parties.

The legal authority and the rationale for sentencing Cutaia in accordance with the
Guidelines set forth in the Plea Agreement is set forth in detail below.  Here, we raise for the
Court's consideration only the following: Had the parties known that Cutaia would be deemed a
Career Offender, the Plea Agreement might well not have included his plea to the § 924(c)
charge.  In the absence of the § 924(c) charge, under the Career Offender Guidelines, the offense
level for the § 1951 violations would be 32 (37 minus 3 for acceptance of responsibility less 2 for
the global disposition), which yields an advisory range of 210 to 262 months imprisonment—
which is nearly identical to the range in the Plea Agreement (210-235 months).

### ANALYSIS OF RELEVANT LEGAL AUTHORITY

A.      **The Advisory Guidelines and 18 U.S.C. § 3553(a)**

In fashioning an appropriate sentence, the Court must consider the Guidelines as well as
the additional factors enumerated in 18 U.S.C. § 3553(a):

"The Court shall impose a sentence sufficient, but not greater than necessary, . . . [and]
shall consider—

1.   The nature and circumstances of the offense and the history and characteristics of the
     defendant;

2.   The need for the sentence imposed—

     a.   To reflect the seriousness of the offense, to promote respect for the law, and to
          provide just punishment for the offense;

     b.   To afford adequate deterrence to criminal conduct;

     c.   To protect the public from further crimes of the defendant;

---

[1] There is a split on this issue among the Courts of Appeals, and, we, therefore, maintain our
position that a violation of § 140.20 does not qualify as a crime of violence under U.S.S.G. §
4B1.2(a)(2).  *Brown*, 514 F.3d at 268-69; *see also United States v. Hurell*, 555 F.3d 122, 124 (2d
Cir. 2009) ("[T]he circuits are split on the question of whether a conviction for burglary of a
building, as opposed to burglary of a dwelling, is a prior conviction for a 'crime of violence'. . . .
[T]his interpretive question is one which the Sentencing Commission is empowered to resolve.
This has particular significance in this context insofar as the Sentencing Guidelines are designed
in significant part to bring about nationwide uniformity in sentencing and to avoid unwarranted
sentencing disparities." *Id*. (citing *Rita v. United States,* 551 U.S. 338 (2007)).

Honorable Eric N. Vitaliano
January 28, 2012
Page 6 of 14

     d.  To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3.  The kinds of sentences available;

4.  The kinds of sentence and the sentencing range established . . . [by the Sentencing Guidelines];

5.  Any pertinent policy statement . . .

6.  The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7.  The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a) (some minor alterations not noted).

Though the Guidelines are an important factor in the sentencing analysis, they are advisory and the Court is generally free to impose a non-Guidelines sentence. *United States v. Gall*, 128 S. Ct. 586 (2007); *United States v. Booker*, 543 U.S. 220 (2005). "The sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (i) to impose the sentence that would have been imposed under the Guidelines, *i.e.,* a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence." *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005); *see also United States v. Castillo*, 460 F.3d 337, 352 (2d Cir. 2006).

In an *en banc* opinion, the Second Circuit erased any doubt as to the degree of discretion that the district courts have in making sentencing determinations: "A sentencing judge has *very wide latitude* to decide the proper degree of punishment for an individual offender and a particular crime." *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (*en banc*) (italics supplied). The *Cavera* court elaborated as to the proper role of the Guidelines in the sentencing calculus and a district court's concomitant authority to issue a non-Guidelines sentence:

> The Guidelines provide the "**starting point and the initial benchmark**" for sentencing, *Gall,* 128 S. Ct. at 596, and district courts must "remain cognizant of them throughout the sentencing process," *id.* at 596 n. 6. **It is now, however, emphatically clear that the Guidelines are guidelines—that is, they are truly advisory**. **A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense**. **District judges are, as a result, generally free to impose sentences outside the recommended range**. When they do so, however, they "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* at 597. **In this way, the district court reaches an informed and individualized judgment in each case as to what is**

Honorable Eric N. Vitaliano
January 28, 2012
Page 7 of 14

> **"sufficient, but not greater than necessary" to fulfill the purposes of sentencing**.  18 U.S.C. § 3553(a).

*Cavera*, 550 F.3d at 189 (emphasis supplied) (footnotes omitted).

In *Cavera*, the Court of Appeals made clear that it would "not substitute [its] own judgment for the district court's on the question of what is sufficient to meet the § 3553(a) considerations in any particular case."  *Cavera*, 550 F.3d at 189.  The Court emphasized that it would not second-guess the determinations of the District Court: "To the extent that our prior cases may be read to imply a more searching form of substantive review, we today depart from that understanding."  *Cavera* 550 F.3d at 189.

The Supreme Court confirmed *Cavera*'s approach in *Nelson v. United States*, 129 S. Ct. 890 (2009), and *Spears v. United States*, 129 S. Ct. 840 (2009).  In *Nelson*, the Court instructed as follows:

> [T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply. Instead, the sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter.

*Nelson*, 129 S. Ct. at 891-92 (internal citations omitted).  Thus, "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable."  *Nelson*, 129 S. Ct. at 892 (emphasis in original).

In addition, in *Spears*, the Court reaffirmed its holding in *Kimbrough v. United States*, 552 U.S. 85 (2007), that "*even in a mine-run case*" *Spears*, 129 S. Ct. at 842 (internal citations omitted) (emphasis in original), "district courts are entitled to reject and vary categorically" from the Guidelines.  *Spears*, 129 S. Ct. at 843-44.

In short, then, a district court may impose any sentence it deems reasonable so long as it articulates the rationale behind it and specifies that it has considered the factors under § 3553(a) and that the sentence imposed satisfies those factors.

**B.      The Career Offender Guidelines**.

As noted above, a court is free to reject the Career Offender Guidelines, either categorically, *Nelson*, 129 S. Ct. at 891-92, or based upon the specific facts of a given case. *United States v. Sanchez*, 517 F.3d 651, 662-65 (2d Cir. 2008) (holding that district courts are permitted to impose non-Guidelines sentences in cases involving Career Offenders).  Indeed, numerous courts have found that the Career Offender Guidelines frequently overstate a defendant's criminal history:

Honorable Eric N. Vitaliano
January 28, 2012
Page 8 of 14

> Balancing the need for meaningful deterrence with the statutory demand to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, 18 U.S.C. § 3553(a), it is determined that a non-Guidelines sentence is warranted. *See United States v. Carvajal,* 2005 WL 476125, at *5 (S.D.N.Y. Feb. 22, 2005) (stating, "**But [the Career Offender Guidelines] are excessive, in light of the nature of [defendant's] recidivism, for the Guidelines for Career Offenders are the same regardless of the severity of the crimes, the dangers posed to victims' and bystanders' lives, and other appropriate criteria**. A sentence that satisfies only the Guidelines would be "greater than necessary, to comply with the purposes" set forth in the statute."); *United States v. Phelps,* 2005 WL 984156, at *6 (E.D. Tenn. April 1, 2005) (noting, "**[i]t is not unusual that the technical definitions of 'crime of violence' and 'controlled substance offense' operate to subject some defendants to not just substantial, but extraordinary, increases in their advisory Guidelines ranges**. In some of these cases, the Court believes a non-Guideline sentence may be sufficient, but not greater than necessary, to both comply with Congress's desire to punish recidivism and the purposes of sentencing set out in § 3553(a)(2).")

*United States v. Blackmond*, 04 CR. 424-06 (RWS), 2006 WL 1676288, *6 (S.D.N.Y. June 14, 2006).

In finding the Career Offender Guidelines unreasonable, a court may also consider the disparity between the sentences imposed in the predicate offenses that render a defendant a Career Offender and the sentence that the Career Offender Guidelines dictate for the defendant:

> "In some circumstances, a large disparity in that relationship [between the punishment prescribed by Criminal History Category VI and the degree of punishment imposed for prior offenses] might indicate that **the career offender sentence provides a deterrent effect so in excess of what is required in light of the prior sentences and especially the time served on those sentences as to constitute a mitigating circumstance** present 'to a degree' not adequately considered by the Commission."

*Blackmond*, 2006 WL 1676288, *5-6 (quoting *United States v. Mishoe*, 241 F.3d 214, 220 (2d Cir. 2001) (emphasis supplied) (brackets in original).

A sentencing court is similarly free to consider the disparity between the Career Offender Guidelines and the Guidelines range absent Career Offender status. *Blackmond*, 2006 WL 1676288, *6.

In addition to considering whether the Career Offender Guidelines overstate a defendant's criminal history, when determining the applicability of the Career Offender Guidelines, it is appropriate for a court to consider disparities not just between a defendant and

Honorable Eric N. Vitaliano
January 28, 2012
Page 9 of 14

those convicted of similar crimes but also between a defendant and his co-defendants. *Blackmond*, 2006 WL at 1676288, *7 (citing cases).

In *Blackmond*, the defendant faced 262 to 327 months imprisonment under the Career Offender Guidelines. *Id.* at *6. By contrast, he had not served more than eight months for either of the predicate offenses that rendered him a Career Offender. *Id*. Accordingly, the Court found that a sentence pursuant to the Career Offender Guidelines was unnecessary to deter the defendant. *Id*. In addition, absent the Career Offender Guidelines, defendant's range would have been 135 to 168 months as opposed to 262 to 327 months, which the Court deemed a substantial disparity. *Id*.

The Court in *Blackmond*, therefore, found that a sentence under the Career Offender Guidelines was unnecessary to address the concerns regarding recidivism that the Guidelines were designed to prevent:

> "Obviously, a major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve. That reason requires an appropriate relationship between the sentence for the current offense and the sentences, particularly the times served, for the prior offenses."

*Blackmond*, 2006 WL 1676288, *6 (quoting *Mishoe*, 241 F.3d at 220); *see also United States v. Rivera*, 2006 WL 3432062, *5-7 (S.D.N.Y. Nov. 29, 2006) (sentencing defendant to 60 months imprisonment based upon finding that Career Offender Guidelines range of 151-188 months unnecessary to achieve aims of § 3553(a) where defendant had never served more than 39 months imprisonment for prior conduct).

Accordingly, the *Blackmond* Court sentenced the defendant to the mandatory minimum term of imprisonment under the statute, which was 120 months imprisonment.

Similarly, in *Carvajal,* the Career Offender Guidelines yielded a range of 262 to 327 months imprisonment. *United States v. Carvajal*, 2005 WL 476125, *4 (S.D.N.Y. Feb. 22, 2005). The Court, however, determined that a sentence in the prescribed range would have been excessive to achieve the goals of § 3553(a) and instead sentenced him to 168 months (14 years). *Id*. at *6. In reaching this conclusion, the Court considered the fact that, at 34 years old, a 168-month sentence would mean that Carvajal would not be released until he was 48 years old—a lengthy sentence, but one that would still enable him to look forward to something beyond imprisonment and thus one that would serve the goal of rehabilitation:

> **Rehabilitation is also a goal of punishment**. 18 U.S.C. § 3553(a)(2)(D). **That goal cannot be served if a defendant can look forward to nothing beyond imprisonment**. **Hope is the necessary condition of mankind**, for we are all created in the image of God. **A judge should be hesitant before sentencing so severely that he destroys all hope and takes away all possibility of useful life**.

Honorable Eric N. Vitaliano
January 28, 2012
Page 10 of 14

> Punishment should not be more severe than that necessary to satisfy the goals of punishment.

*Carvajal*, 2005 WL 476125, *6.

## THE TERMS OF THE PLEA AGREEMENT
## SATISFY THE REQUIREMENTS OF 18 U.S.C. § 3553(a).

**A.      A Sentence Under the Career Offender Guidelines is Unwarranted**.

A sentence under the Career Offender Guidelines is unwarranted in this case to achieve the aims of 18 U.S.C. § 3553(a).  As discussed above, the primary reason for the Career Offender Guidelines is to provide a deterrent effect that a defendant's prior sentences were unable to accomplish.  *Blackmond*, 2006 WL 1676288, *6 (quoting *Mishoe*, 241 F.3d at 220); *Rivera*, 2006 WL 3432062, *5-7.

Here, Cutaia has never been incarcerated for more than 27 months, which is far less than the 210-235 months that he faces under the terms of the Plea Agreement.  PSR at 38-47.  At the low end of the range in the Plea Agreement, Cutaia faces a sentence of 210 months, which is eight times greater than his longest period of incarceration to date.  Thus, as in *Rivera*, a Career Offender Guidelines sentence is unnecessary to satisfy the goals of 18 U.S.C. § 3553(a).  *Rivera*, 2006 WL 3432062, *5-7 (sentencing defendant to 60 months imprisonment based upon finding that Career Offender Guidelines range of 151-188 months unnecessary to achieve aims of § 3553(a) where defendant had never served more than 39 months imprisonment for prior conduct); *see also Blackmond*, 2006 WL 1676288, *6-7 (declining to impose sentence under Career Offender Guidelines and sentencing defendant to non-Guidelines term of ten years where defendant had never served more than eight months imprisonment on prior sentences).

Accordingly, as in *Rivera* and *Blackmond*, a sentence within the Career Offender range of 330 to 382 months (approximately 13 times greater than his longest prior sentence) is far more than necessary to provide the deterrent effect that Cutaia's prior sentences were unable to provide.  Consequently, this disparity counsels against imposition of a sentence under the Career Offender Guidelines.

With respect to the two sentences that Probation used to qualify Cutaia as a Career Offender, one was the attempted burglary, which resulted in the 27-months of incarceration mentioned above, and the other resulted in a total period of incarceration of approximately 15 months.  PSR at 40-41.  Accordingly, by this measure, a sentence between 210 and 235 months represents a substantial increase over the sentences for the qualifying predicate offenses—an increase that is more than sufficient to deliver the increased deterrent that the Career Offender Guidelines would otherwise be used to provide.  *See Blackmond*, 2006 WL 1676288, *5-6 (quoting *Mishoe*, 241 F.3d at 220) (holding that disparity between sentences imposed on predicate offenses and sentence called for by Career Offender Guidelines is a basis for declining to apply Career Offender Guidelines).

Honorable Eric N. Vitaliano
January 28, 2012
Page 11 of 14

In addition, the disparity between the Career Offender Guidelines and the range that would otherwise apply also militates against utilizing the Career Offender Guidelines in this case. The Career Offender Guidelines range (assuming a two-point reduction for the Global disposition of this case) is 330 to 382 months (27.5 - 32 years) imprisonment. By contrast, absent the Career Offender Guidelines, the range is 210 to 235 months (17.5 - 19.5 years) imprisonment. Thus, the Career Offender Guidelines call for an increase to the otherwise applicable range of more than 60 percent. *See Blackmond*, 2006 WL at 1676288, *6 (declining to impose sentence under Career Offender Guidelines where range of 262-327 months represented 50 percent increase over otherwise applicable range of 135-168 months).

The fact that a sentence under the Career Offender Guidelines would render Cutaia's sentence grossly disproportionate to that of his co-defendants also weighs against their utilization. *Blackmond*, 2006 WL at 1676288, *7 (citing cases). Indeed, even absent the Career Offender Guidelines, Cutaia will receive substantially more time than any of his co-defendants.

Of the defendants sentenced to date, one received nine years incarceration (which is to run concurrently with a previously imposed sentence in another case), one received six and half years, and the remainder fall considerably below that level. Thus, even at the low end, the Career Offender Guidelines would impose on Cutaia more than triple the punishment received by any of his co-defendants.

Moreover, the Plea Agreement already reflects the parties' acknowledgment that Cutaia's conduct and criminal history warrant a greater sentence than his co-defendants, which is why the parties agreed on a Guidelines range of 210 to 235 months imprisonment, *i.e.*, approximately double that of his co-defendant with the next highest sentence. Accordingly, in light of the fact that the Plea Agreement provides ample punishment in comparison to that imposed on his co-defendants, a sentence under the Career Offender Guidelines would create an unwarranted disparity between Cutaia and his co-defendants, which supports imposition of a sentence in accordance with the Plea Agreement.

Additionally, a sentence under the Career Offender Guidelines would be inconsistent with the goals of rehabilitation. *Carvajal*, 2005 WL 476125, *6 (citing 18 U.S.C. § 3553(a)(2)(D)) (declining to impose sentence under Career Offender Guidelines because goal of rehabilitation defeated if "a defendant can look forward to nothing beyond imprisonment."). In *Carvajal*, the Court imposed a sentence of 168 months imprisonment as opposed to one within the Career Offender range of 262 to 327 months. *Id*. at *4, 6. In doing so, the Court found that, at 34 years old, a 168-month sentence, though substantial, would enable defendant to leave prison at the age of 48 and, therefore, still be able to look forward to a life ahead. *Id*. at *6.

Here, Cutaia, who is 33 years old (nearly the same age as the defendant in *Carvajal*), faces a minimum of 330 months under the Career Offender Guidelines, which is substantially more than the 262-327 month range that the Court in *Carvajal* found excessive. *Id*. If the Court sentences Cutaia pursuant to the terms of the Plea Agreement, however, Cutaia will be able to look forward to a life beyond prison. Accordingly, the fact that a sentence in accordance with

Honorable Eric N. Vitaliano
January 28, 2012
Page 12 of 14

the Plea Agreement will best serve the rehabilitative goals of punishment also weighs against imposition of sentence under the Career Offender Guidelines.

In sum, a sentence pursuant to the Career Offender Guidelines would be inconsistent with the goals of 18 U.S.C. § 3553(a) because it (a) is unnecessary to provide a sufficient deterrent effect, (b) would be grossly disproportionate to any of Cutaia's prior sentences, (c) would represent an excessive increase above the otherwise applicable Guidelines; (d) would create a disproportionate disparity between Cutaia's sentence and the sentences imposed on his co-defendants, and (e) would defeat the rehabilitative goals of 18 U.S.C. § 3553(a).  Accordingly, for all of these reasons, we respectfully request that the Court decline to sentence Cutaia under the Career Offender Guidelines.

**B.      The History and Characteristics of Joseph Cutaia Support a Sentence in Accordance with the Plea Agreement**.

There is no doubt that Joseph Cutaia has made some serious mistakes.  There can also be no denying that he has admitted those mistakes and stands ready to pay the price for his choices.  Indeed, the Plea Agreement that he entered calls for a Guidelines range of between 210 and 235 months imprisonment with a mandatory minimum sentence of ten years.  Moreover, not only did he admit his mistakes and agree to a substantial punishment, he informed the government soon after his arrest that he wished to dispose of the case by way of a negotiated plea.  Thus, he readily came forward to accept responsibility for his actions.  Indeed, the fact that his sentencing comes a little over two years subsequent to his arrest is not due to any delay on his part but rather is the result of the fact that his plea was contingent on those of his many co-defendants.

Beyond his readiness to accept responsibility in the instant case, Joseph Cutaia has a lifelong history of taking on responsibility—often responsibility well beyond what a person of his age would typically be expected to manage.  As detailed in the accompanying letters from his family members, Exhibit C, Letters from Family Members to the Honorable Eric N. Vitaliano, and in the PSR, Joseph is the product of a broken home.  When he was still a toddler, his parents divorced and he went to live with his mother.

For a brief period in his life, he had a relatively normal existence living with his mother and stepfather in what was reportedly a loving family environment.  When Joseph was 14, however, his stepfather was incarcerated.  At that point, his life deteriorated rapidly.  His mother retreated to alcohol to numb her pain and young Joseph was left to fill the void for his younger siblings.  Despite his youth, Joseph rose to the occasion and assisted his brothers and sisters with school and other daily needs, such as the preparation of meals.

Meanwhile, his mother's condition worsened.  To her alcoholism was added multiple sclerosis and cirrhosis of the liver, which to this day have a devastating impact on her.  With her husband incarcerated and her health failing both physically and mentally, Joseph's mother reunited him with his biological father.  Though well intentioned, Joseph's reunification with his father did not have the desired effect.  The loss of the primary family unit in which he had grown

Honorable Eric N. Vitaliano
January 28, 2012
Page 13 of 14

up was apparently too great to repair.  Thus, as he entered his teen years, Joseph began down the road that led him to this point.

Yet, despite his many wrong turns and mistakes, Joseph is roundly described as a loving, good-natured person who is always on hand to help his family.  In addition, and perhaps most telling, shortly before his arrest in the instant case, Joseph married his girlfriend and the couple moved from Staten Island to Brooklyn where they planned to start a family.  His marriage was intended to be the beginning of a new chapter in his life.

Now, unfortunately, that chapter must wait.  No matter what the Court decides, Joseph will be incarcerated for a considerable period of time.  Nevertheless, he continues to maintain a positive outlook on life and looks forward to paying for his mistakes so that he can resume his life with his family.

We do not suggest that Joseph's personal history or the fact that he has done good deeds for those whom he loves excuse his behavior.  Nonetheless, in sentencing him, we believe that it is important to see Joseph in the context of his life and to recognize that there is ample good within him and that he is, therefore, worthy of redemption despite his mistakes.  Accordingly, we respectfully suggest that his history and characteristics support imposition of a sentence in accordance with the terms of Plea Agreement.

C.     **Additional Factors Under 18 U.S.C. § 3553(a) Support a Sentence in Accordance With the Plea Agreement**.

With respect to the remaining factors set forth in 18 U.S.C. § 3553(a), we believe that a sentence in accordance with the agreement of the parties will be "sufficient but not greater than necessary" to satisfy the purposes of the statute.  As for the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, we believe that under the circumstances a sentence can be fashioned to achieve those goals without imposition of the Career Offender Guidelines.

In addition, with respect to the need to avoid disparities between defendants convicted of similar offenses, we note—without minimizing the severity of the crimes to which Cutaia pled guilty—that defendants in this district who have been convicted of murder (and even multiple murders) have received less time than Cutaia faces under the terms of the Plea Agreement.  *See e.g.*, *United States v. Urso*, 03-cr-1382 (NGG) (defendants convicted of multiple murders received sentences ranging between ten and 20 years).

Therefore, for all of the above reasons, we respectfully submit that a sentence in accordance with the terms of the Plea Agreement is sufficient to achieve the aims of 18 U.S.C. § 3553(a).

Honorable Eric N. Vitaliano
January 28, 2012
Page 14 of 14

## REQUESTED SENTENCE

We respectfully submit that a sentence of 15-years imprisonment is just and reasonable under the totality of the circumstances.  The Plea Agreement prescribes a Guidelines range of 210 to 235 months imprisonment but unlike most, if not all, of the other plea agreements in this case, Cutaia is entitled to ask the Court to sentence him below the stipulated Guidelines range.  This agreement was reached because the parties recognized that the Court could reasonably find that a sentence below the stipulated range is sufficient to achieve the goals of 18 U.S.C. § 3553(a).  Accordingly, we request that the Court sentence Cutaia to a term of imprisonment of 15 years.

At the completion of a 15-year term of imprisonment, Cutaia will return to society a much older man than he is now but still young enough to make something of his life.  Indeed, he will still be young enough to start the family that he had hoped to begin prior to his arrest.  In addition, a 15-year sentence would still be substantially more than imposed upon any of his co-defendants and far in excess of any sentence that Cutaia has served in the past.

Thus, taking the totality of the circumstances into account—Cutaia's history and characteristics, the sentences imposed on his co-defendants, and all of the other factors discussed in this letter—we respectfully submit that a 15-year sentence is just and reasonable.  *See Blackmond*, 2006 WL 1676288, *6 (finding Career Offender Guidelines unwarranted and sentencing defendant to 120 months imprisonment, which was below the non-Career Offender Guidelines range of 135-168 months).

## CONCLUSION

For the reasons set forth above, we respectfully request that the Court sentence Joseph Cutaia to 15 years imprisonment.

Respectfully,


____/s/_____
Seth Ginsberg

cc:     A.U.S.A. Rachel Nash (via ECF)