

U.S. Department of Justice

United States Attorney
Eastern District of New York

DEL

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 11, 2024

The Honorable Taryn A. Merkl
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Joseph Cutaia
               Criminal Docket No. 10-10 (ENV)

Dear Judge Merkl:

      The government respectfully submits this letter in advance of defendant Joseph Cutaia's arraignment on a May 21, 2024 violation report (the "Violation Report"), charging eight violations of supervised release in the above-captioned case, and in support of its application for a permanent order of Cutaia's detention pending the resolution of these charges.

      Detention is necessary here, because in the past seven months Cutaia has demonstrated — repeatedly — that he will not comply with conditions of supervision and that if released, he poses a real danger to community. Since his term of supervision began in late 2023, Cutaia has been arrested or detained by law enforcement officers at least seven times, including in serious motor vehicle accidents where he operated a car or a motorcycle without a valid driver's license, in several suspected domestic violence calls involving his family, and in other circumstances where he possessed controlled substances and weapons. In nearly every encounter, Cutaia lied to law enforcement officers about his name and other identifying information to avoid detection or further charges. He currently faces local charges in connection with several incidents in Staten Island, Aberdeen, New Jersey, and Colts Neck, New Jersey. He cannot be trusted to appear in court nor keep in contact with his assigned probation officer.

      Because Cutaia violated the terms of his supervised release, the burden is on Cutaia to establish — by clear and convincing evidence — that he will not flee or pose a danger to any other person or to the community. Fed. R. Crim. Pro. 32.1(a)(6); United States v. Grady, 818 F. App'x 86, 88 (2d Cir. 2020). He cannot meet that burden. For the reasons set forth below, Cutaia should be detained as a danger to the community, a flight risk or both.

I.      Underlying Criminal Case

In 2009, Cutaia entered the residence of Jane Doe, a woman in her 60s who lived in Poughkeepsie, New York. Inside, Cutaia and others brandished firearms, bound Jane Doe with zip ties and stole approximately $20,000 in jewelry and coins, and $13,000 in cash. That year, Cutaia also attempted to rob John Doe #5 whom Cutaia had previously restrained and robbed five years earlier in 2004. John Doe #5 managed to escape unharmed despite one of Cutaia's co-conspirators firing shot as John Doe #5 fled.

Cutaia was charged in connection with these incidents (as well as other crimes) in this District and alleged to be an associate of the Luchese crime family. On April 1, 2011, Cutaia pled guilty, pursuant to a plea agreement, to two counts of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Counts Twenty-Three and Twenty-Four of a superseding indictment) and unlawful use of a firearm in connection with the robbery charged in Count Twenty-Six, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count Twenty-Six). See ECF Dkt. No. 188.[1]  Cutaia was sentenced to 120 months' imprisonment on Counts Twenty-Three and Twenty-Four (to run concurrently), and 120 months' imprisonment on Count Twenty-Six (to run consecutively to Counts Twenty-Three and Twenty-Four), to be followed by 3 years' supervised release on each count, to run concurrently.

On June 27, 2016, Cutaia sought to vacate his conviction on the firearms count (Count Twenty-Six), which was no longer based on a valid predicate crime of violence. ECF Dkt. No. 433. On March 3, 2021, the Court vacated the Cutaia's sentence and conviction on Count Twenty-Six. ECF Dkt. No. 491. On February 4, 2023, the Court re-sentenced Cutaia to 180 months' imprisonment on Counts Twenty-Three and Twenty-Four, to run concurrently, to be followed by three years' supervised release on each count, to run concurrently. The Court imposed several conditions of supervised release, including that Cutaia (1) comply with the forfeiture order and restitution order and make full financial disclosure to the Probation department; (2) not associate in person, through mail, electronic mail or telephone with any individual with an affiliation to any organized crime groups, gangs or any other criminal enterprise; nor shall the defendant frequent any establishment, or other locale where these groups may meet pursuant, but not limited to, a prohibition list provided by the Probation Department; (3) not possess a firearm, ammunition, or destructive device; and (4) comply with a condition that permitted the Probation Department to search his premise, workplace or electronic devices.

---

[1]     In addition to the robberies charged in Counts Twenty-Three and Twenty-Four in Cutaia, between approximately 2002 and 2009, Cutaia was involved in multiple additional armed robberies of individuals he believed to be involved in illegal activities such as narcotics trafficking and bookmaking. During these robberies, the defendant and his co-conspirators threatened the victims with guns and knives, restrained them with zip ties, and in certain instances, physically assaulted and even shot the victims. ECF Dkt. No. 506.

2

II.     Cutaia's Conduct During His Term of Supervised Release

On December 1, 2023, Cutaia began his term of supervision. Cutaia soon began using illegal controlled substances. On January 9, January 17, January 24, and February 27, 2024, Cutaia variously tested positive for fentanyl, morphine, oxymorphone, oxycodone, and cocaine. On February 8, 2024, the Court imposed — and Cutaia agreed to attend — substance abuse treatment and submit to additional drug testing.

On February 27, 2024, Cutaia completed a substance abuse intake assessment at Bridge Back to Life, Inc. He was recommended for intensive outpatient treatment. During the assessment, Cutaia tested positive for cocaine and morphine.

Two days later, on February 29, 2024, an officer from the New York City Police Department ("NYPD") arrested Cutaia, after stopping Cutaia's car due to excessive window tints as he was driving alone in Staten Island. Cutaia told the officer his name was Joseph DeGerolamo and that he had a suspended driver's license. The officers observed a switchblade on the front passenger seat, a concealed knife, and a small quantity of suspected heroin residue (which tests later determined was in fact cocaine) in a straw. Cutaia was charged in Richmond County criminal court with criminal possession of a controlled substance in the seventh degree (a misdemeanor), aggravated unlicensed operation of a motor vehicle in the third degree (a misdemeanor), and two infractions and released on his own recognizance. Cutaia failed to appear in court as directed, and on April 25, 2024, a bench warrant issued for Cutaia's failure to appear in court.

A week later, on March 6, 2024, Cutaia entered Surfpoint Recovery detoxification program in Brooklyn. He stopped attending treatment on or about March 7, 2024, purportedly because he did not like the food or medication. He left the program against medical advice. By this time, Cutaia had his approved residence on Staten Island and stopped communicating with his probation officer and ignored repeated directives from the officer to report the Probation offices.

On March 13, 2024, during morning commuting hours, Cutaia was involved in a significant car accident in Colts Neck, New Jersey. According to a witness, Cutaia swerved into another driver. He still did not have a valid driver's license. When questioned by police officers on scene, Cutaia said his name was "Salvatore Cutaia" (a name that, as shown on body camera footage, he carefully spelled out letter by letter), provided a fake birth date and claimed he did not know his home address. He denied having identification. When asked a second time, Cutaia insisted his name was Salvatore. His wife arrived thereafter and also insisted Cutaia's name was Salvatore.[2]

On March 20, 2024, at approximately 2:17 a.m., officers from the Colts Neck Police Department received a call about a domestic dispute at a residence (the "Colts Neck Residence"). An officer spoke to the man inside the residence, who initially claimed his name was "Joseph Montecalvo" but was later identified as Cutaia.

---

[2]     An officer's body-worn camera footage shows Cutaia in possession of multiple cell phones. An officer on scene remarked, "I don't even know who this guy is… He's got ten phones."

3

On April 30, 2024, Cutaia crashed a motorcycle in Aberdeen, New Jersey. Cutaia did not have a valid driver's license, vehicle insurance or a motorcycle endorsement. Officers responded to the scene of the accident and, according to body-worn camera footage, witnesses reported Cutaia was speeding on the motorcycle.[3] Police found Cutaia was at fault for the accident and issued Cutaia a summons for being an unlicensed driver (a misdemeanor), driving with a suspended license (a misdemeanor), and an infraction.

On May 1, 2024, officers from the Colts Neck Police Department received an emergency call regarding a second domestic dispute at the Colts Neck Residence. When officers arrived, Cutaia identified himself as "Joe Montecalvo," and told the officers that he resides at the home. A relative expressed concern to police about the situation escalating into physical violence. The following day, a relative and resident of the Colts Neck Residence obtained a restraining order against Cutaia in connection with threats of violence he made toward another family member and a physical altercation. The restraining order prohibited Cutaia from residing at the Colts Neck Residence. It appears Cutaia continued to reside at the Colts Neck Residence, despite the issuance of the restraining order.

On June 2, 2024, an officer from the Aberdeen Police Department stopped Cutaia as he was driving alone. Cutaia, whose face is clearly captured on the officer's body-worn camera footage, claimed his name was "Jon Montecalvo," and provided a fake date of birth. When questioned about his name and birth date, Cutaia then claimed his name was "Jason" but noted "everyone calls me Jon," and gave another false birth date. Cutaia again claimed not to know his address. The officer asked Cutaia who "Joseph Cutaia" was, and Cutaia claimed it was his brother. After the officer returned to his vehicle to run the new name and birth date, Cutaia sped away from the scene in his car and led police on a high-speed chase. Cutaia was later charged with resisting arrest/eluding an officer in the second degree (a misdemeanor) and obstructing the administration of law or other governmental function in the fourth degree (a misdemeanor).

Two days later, on June 4, 2024, Cutaia was stopped for erratic driving by the officers from La Porte County Sheriff's Department in Indiana. Cutaia claimed his name was "John Baudanza," provided a fake birth date, professed not to know his address and stated he did not have his driver's license. He ultimately admitted his name and that he was on federal probation. Officers found multiple cell phones, marijuana, and (what was later confirmed to be) heroin. Upon his entrance into the local jail facility, a marshal conducted a visual strip search. The search revealed that Cutaia had attempted to conceal an additional white substance in a plastic bag in his rectum. When he realized the bag had been spotted, Cutaia then attempted to swallow before officers could seize it. The marshal conducting the search stated Cutaia struggled against the officers, refused to put his hands behind his back and had to be subdued. After Cutaia tried to swallow the plastic bag, staff had to use the Heimlich maneuver to clear his airway and allow him to breathe.

---

[3] A witness told officers that the witness "did not want to be involved" because the witness stated they were intimidated by Cutaia.

Cutaia has remained in custody since the June 10 arrest at various facilities. Personnel at these facilities have reported incidents of property destruction, attempted self-harm and threats of violence. For instance, on June 11, 2024, Cutaia used a plastic chair to break through a glass door in the medical wing. Later in June, he swallowed a spoon in an attempt to leave the facility.

On monitored phone calls, Cutaia has made violent threats to others. For example, on June 10, 2024, Cutaia told his relative (the "Relative") that "if you hang up on me one more time, the minute I come home, I am going to lay your hands on a cutting board and chop your fucking fingers off, I promise you." In another example, on June 10, 2024, Cutaia told the Relative "[i]f that cocksucker gets rid of the dog I will murder every one of youse . . . I will eat her heart, I will kill her, I will kill her, let her touch my dog, I promise you that." In another example on June 10, 2024, Cutaia warned the relative "I'm not stuck in here bitch, I'm not stuck, I'm not stuck, now get it through your mother fucking head."

Cutaia has also appeared to issue instructions to others to violate facility rules and obstruct ongoing investigations. For example, on June 12, 2024, in a monitored phone call, Cutaia instructed the Relative to coat paperwork containing his violation charges in a liquid and send Cutaia the altered papers via his attorney:

| | |
|---|---|
| Cutaia: | Beck has- |
| Relative: | What do you want me- |
| Cutaia: | Beck has the liquid, you hear me? |
| Relative: | Yeah? |
| Cutaia: | Print out my charges, print out my violation, put it all on top, on top of there, and give it Tommy, and let him bring it to me. |
| Relative: | Okay. |
| Cutaia: | You understand? |
| Relative: | A little bit, ha, I'll figure it out, um- |
| Cutaia: | [Relative's first name], the stuff that I used to have, the liquid, Beck has it- |
| Relative: | OK. |
| Cutaia: | I need you to put it on my charges and my paperwork and give it to my lawyer so he can bring it to me. |
| Relative: | OK, OK, OK. |
| Cutaia: | Make sure you do that ASAP. |

In this call, Cutaia instructed the Relative to print out his charges, put the liquid "all on top" and "give it to my lawyer so he can bring it to me." In another monitored call on June 5, 2024, Cutaia asked the Relative if she had "hid" the other thing he gave her, and later, on June 7, 2024, directed her to "get rid of the rose gold Daytona with the black leather band." In another monitored call on June 24, 2024, Cutaia asks the Relative if she "could shut [his] iCloud off" and the Relative responded that she "disabled [his] phone yesterday."

III. <u>Charged Conduct</u>

The Violation Report charges Cutaia with eight violations of supervised release:

- Charge #1:  Illegal Drug Use (fentanyl, morphine, oxymorphone, cocaine, oxycodone) on or about January 9, 2024, January 17, 2024, January 24, 2024, and February 27, 2024

- Charge #2:  Failure to Participate in Outpatient Substance Abuse Treatment following March 7, 2024

- Charge #3:  Failure to Report a Change in Residence since March 20, 2024

- Charge #4:  New Criminal Conduct – Unlicensed Driver on April 30, 2024

- Charge #5:   Failure to Report Contact with Law Enforcement since April 30, 2024

- Charge #6:  Failure to Report to the Probation Officer as Instructed on April 18, 2024, April 26, 2024, May 2, 2024, and May 16, 2024

- Charge #7:  Failure to Report Contact with Law Enforcement since March 20, 2024

- Charge #8:  Failure to Report Contact with Law Enforcement since May 1, 2024

In addition to the Violation Report charges, Cutaia faces criminal charges in New York in connection with the February 28 incident, and in New Jersey in connection with the April 30 and the June 2 incidents.

IV. <u>Applicable Law</u>

As set forth in the Bail Reform Act, courts consider four factors in a detention analysis: (1) the nature and circumstances of the offenses charged, including whether the offense is a crime of violence, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).  In addition, a court may order detention if there is a "serious risk that the [defendant] will . . . obstruct or attempt to obstruct justice, or . . .  intimidate . . . a prospective witness," among other things. <u>See</u> 18 U.S.C. § 3142(f)(2)(B); <u>United States v. Cincinelli</u>, No. 19-CR-0245 (JS), 2021 WL 2530711, at *2 (E.D.N.Y. June 18, 2021) (court ordered the defendant remain in custody pending sentence given the judge's finding that the defendant's release presents a risk of further obstruction of justice).

A defendant on supervised release bears the burden of showing, through clear and convincing evidence, that he or she will not flee or pose a danger pending a hearing on the revocation of probation or supervised release. See Fed. R. Crim. P. 32.1; see also United States v. Fernandez, 144 F. Supp. 2d 115 (N.D.N.Y. 2001) (finding detention on charged violations of supervised release appropriate because the defendant's danger to the community was evident from his felony convictions for both drug dealing and trafficking in stolen weapons). A defendant's previous compliance (or lack thereof) with the conditions of supervised release is relevant to the question of detention. Cf. United States v. Johnson, No. 16-CR-0457, 2017 WL 11563342 (E.D.N.Y. Dec. 13, 2017) (permitting release on conditions given defendant's previous compliance with the conditions of his supervised release).

V.      Argument

Cutaia should be detained as both a danger to the community and a flight risk. Cutaia recently completed a 15-year sentence in connection with violent home invasion-robberies. Since his release in fall 2023, despite his court-ordered term of supervised release, Cutaia uses drugs, has access to weapons, threatens family members and is the subject of a restraining order. He has been involved in at least five accidents and traffic stops this year alone, resulting significant damage. Moreover, in the last several months, Cutaia stopped complying with the terms of his supervised release, evaded detection by using false names and birth dates and failed to appear for court proceedings in Staten Island and New Jersey. There are no conditions the Court can impose to ensure Cutaia's future appearance in court and the safety of the community.

      A.      Cutaia Poses a Danger to the Community

Cutaia is a menace to other drivers and pedestrians, has repeatedly threatened to harm others, including his own family members, has access to dangerous weapons and is using deadly controlled substances. Moreover, by refusing to contact his probation officer, attend drug treatment, or obey bench warrants and court summons, Cutaia has shown he will not obey even the most basic conditions of release.

Between late February and mid-June 2024, despite not having a valid driver's license, Cutaia was involved in two serious accidents, led police officers on a high-speed chase in suburban New Jersey and was stopped twice (in Staten Island and Indiana) for driving infractions while possessing controlled substances. Not one of these incidents (nor his lack of a driver's license) deterred Cutaia from getting behind the wheel and endangering other drivers and pedestrians. The March 13 accident, which occurred during morning commuting hours, resulted in significant damage to both Cutaia's and the other driver's vehicles, as shown in police officer's body-worn camera footage. As shown, the other driver's vehicle was found entirely off the roadway with severe damage and the driver (a young woman) was distraught following the accident. On June 2 — Cutaia's fourth vehicle-related incident in four months — police stopped Cutaia's vehicle and Cutaia fled the scene and led officers on a high-speed chase, ultimately

7

eluding them. If Cutaia is released, it is only a matter of time before he again gets behind the wheel and his unlicensed and dangerous driving injuries or kills someone.

Cutaia has access to weapons and has threatened to use them. Officers found a switchblade and a knife in his car during the February 29 traffic stop. In phone calls he knew were monitored by prison officials, he told a family member that he would "chop your fucking fingers off" and "murder every one of youse" and "eat her heart." This is not just colorful language. Twice in six weeks, police responded to emergency calls at the Colts Neck Residence for domestic disputes. After an alleged physical and verbal altercation, another family member sought (and was awarded) a restraining order against Cutaia. Cutaia's criminal history indicates that he has committed violent robberies against vulnerable victims.

Cutaia has also been using addictive and mind-altering drugs, which only exacerbates the potential danger he poses. He has refused to submit to treatment and testing despite the district court's orders. Less than two days after his June 11 arrest, he attempted to convince his Relative to smuggle drug-coated legal paperwork into the prison.

    B.    <u>The Weight of the Evidence Against Cutaia Is Overwhelming</u>

The weight of the evidence against Cutaia on the charged violations is overwhelming. The government's evidence includes police reports, body-worn camera footage, witness testimony, other documentary evidence, and Cutaia's own statements on monitored calls and in his seized cell phones.

    C.    <u>Cutaia's History and Characteristics Show Detention is Warranted</u>

Cutaia's criminal history is extensive. Before his conviction in <u>United States v. Cutaia</u>, No. 10-CR-10 (ENV) (E.D.N.Y.), he was convicted of attempted petit larceny (1995); petit larceny (1995); sexual abuse in the first degree by forcible compulsion (1996); resisting arrest (2001); grand larceny in the fourth degree involving property greater than $1,000 (2003); attempted assault with intent to cause injury to an officer (2003); burglary in the second degree (2003); possession of a forged instrument in the second degree (2004); and attempted burglary in the third degree involving illegal entry with intent to commit a crime (2005). He was released from state custody in January 2008 and was arrested two years later for the underlying conviction (No. 10-CR-10) on December 16, 2009. That conviction — conspiring to commit two violent Hobbs Act robberies — demonstrates Cutaia's willingness and ability to engage in violence. While armed, Cutaia used restraints to tie down and rob an elderly woman in her home. That same month, he attempted to do it again to another victim who escaped during a round of gunfire.

Cutaia also has significant ties to the Luchese organized crime family of La Cosa Nostra, a criminal enterprise that engages in violent crimes, extortion, loansharking, drug trafficking and fraud. He was alleged to be a Luchese associate in the underlying case. Since his release from prison in 2023, toll records and monitored prison calls indicate that Cutaia has contacted several previously convicted members and associates of organized crime. On some of the monitored prison calls, Cutaia is advising members of organized crimes that he (Cutaia) believes law enforcement officers have interviewed or served with grand jury subpoenas in

connection with his arrest. Those affiliated with organized crime pose a particular threat to the community due to the continuing nature of the crime families' violent criminal activities. Because organized crime defendants are affiliated with an illegal enterprise, they pose a distinct threat to commit additional crimes if released on bail. See, e.g., United States v. Salerno, 631 F. Supp. 1375 (S.D.N.Y. 1986).

Moreover, Cutaia's conduct while serving the 15-year sentence imposed in his most recent federal criminal case demonstrates his inability to comply with rules and directives even while in prison. Cutaia incurred numerous sanctions while incarcerated: giving/accepting money without authorization; refusing to obey an order; use of drugs/alcohol; possessing drugs/alcohol; possessing a non-hazardous tool; refusing a drug/alcohol test; use of drugs/alcohol; use of drugs/alcohol; use of drugs/alcohol; possessing a dangerous weapon; disruptive conduct; possessing a dangerous weapon; assaulting without serious injury; possessing a non-hazardous tool; and possessing a non-hazardous tool. As recently as last month, Cutaia used a plastic chair to shatter a glass window in the medical facility where he was being held for treatment.

    D.    <u>Flight Risk</u>

Finally, if Cutaia is released, it seems unlikely he will appear at a future court date, much less comply with his conditions of release. Cutaia cut off contact with his probation officer in March 2024, and despite multiple attempts from Probation, Cutaia never reported to their offices. He then stopped staying at his approved residence on Staten Island, left court-ordered drug treatment (also against medical advice), and was stopped or arrested by local police seven times. In nearly every documented encounter with police, Cutaia provided a false name and birth date so as to avoid detection by federal and court officers.

In the past several months, Cutaia has also failed to appear in local courts for two other pending charges despite court-issued summons and bench warrants for his arrest. Indeed, two days after he fled the scene of a traffic stop in Aberdeen, New Jersey, Cutaia was arrested in Indiana while he was traveling to Chicago. As Cutaia noted on a June 12, 2024 monitored prison call, he has been "on the run" before. If Cutaia is released, the Court has no reason to trust he will not do so again, to avoid a future court date and resolution of these charges.

V.	Conclusion

   For the reasons set forth above, the government respectfully requests that the Court enter a permanent order of detention with respect to Cutaia.

             Respectfully submitted,

             BREON PEACE
             United States Attorney

         By:   /s/
             Devon Lash
             Assistant U.S. Attorney
             (718) 254-6014

cc: Clerk of Court (TAM)
   Thomas S. Mirigliano, Esq. (Counsel for Defendant)
   U.S. Probation Officer John Lanigan